Filed 10/15/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LILIA GARCIA-BROWER, <br><br> Plaintiff and Appellant, <br> v. <br><br> PREMIER AUTOMOTIVE IMPORTS OF CA, LLC, <br><br> Defendant and Respondent. | A156985 <br><br> (Alameda County <br> Super. Ct. No. RG17872374) |

Labor Code section 432.7 prohibits an employer from asking a job applicant to disclose any conviction that has been judicially dismissed and bars an employer from using any record of a dismissed conviction as a factor in the termination of employment.[1]  Tracey Molina was hired by respondent Premier Automotive Imports of CA, LLC (Premier) in 2014.  Exercising her rights under the Labor Code, she did not disclose a dismissed 2010 conviction for misdemeanor grand theft on her job application.  She passed Premier's criminal background check and had been working for the company for four weeks when the Department of Motor Vehicles (DMV) mistakenly reported that Molina had an active criminal conviction.

Rather than investigate the discrepancy between the criminal background reports, Premier decided to terminate Molina for "falsification of

---

[1] All further undesignated statutory references are to the Labor Code.

job application," even after she explained to her superiors that her conviction had been dismissed by court order. Although the DMV issued a corrected notice three weeks later, Molina was not rehired by Premier.

The Labor Commissioner determined that Molina had been unlawfully discharged and ordered her reinstatement with back pay. Premier's administrative appeal of the decision was denied. When Premier did not comply with the orders, the Commissioner filed the instant enforcement action on Molina's behalf.[2] Following the Commissioner's presentation of evidence at trial, the trial court granted Premier's motion for nonsuit, finding an absence of any evidence that Premier was aware at the time it terminated Molina that her conviction had been judicially dismissed. We conclude the trial court erred in granting nonsuit and reverse the judgment below.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Complaint to Labor Commissioner

Molina filed a retaliation complaint with the Labor Commissioner in April 2014 after her termination of employment from Premier. In December 2016, the Commissioner found in Molina's favor and ordered Premier to reimburse Molina's lost wages with interest, pay a civil penalty, and reinstate Molina to her former position or a similar position. Premier lost its appeal to the Director of the Department of Industrial Relations and later refused to comply with the Commissioner's orders.

In March 2018, the Commissioner filed the underlying enforcement action against Premier for violation of sections 98.6 and 432.7. The Commissioner alleged that Premier unlawfully retaliated against Molina for exercising her right to omit disclosure of the dismissed conviction on her job

---

[2] The complaint was originally filed by Commissioner Julie Su, who is succeeded in office by appellant Commissioner Lilia Garcia-Brower.

2

application, and relied on a dismissed conviction as a factor in terminating her employment.  The matter proceeded to a jury trial.

## B.    The Commissioner's Presentation of Evidence at Trial

### i.    *Molina's Dismissed Conviction*

Molina testified that she had pleaded no contest to misdemeanor grand theft in Santa Cruz County Superior Court in May 2010.  The charge arose after she embezzled $2,600 from her then employer, Ocean Honda.  She regretted her wrongdoing and took responsibility for it by paying restitution to Ocean Honda, completing 15 days of community service, and serving three years of probation.  After successfully completing probation, Molina filed a motion under Penal Code section 1203.4 to have her conviction dismissed.[3] The court granted her motion and dismissed her conviction in November 2013.

### ii.    *Premier Hires Molina After Running a Background Check*

Premier is an automobile retailer regulated and licensed by the Department of Motor Vehicles (DMV).  In early 2014, Premier anticipated a vacancy for a contracts/DMV clerk position because the incumbent employee was planning to take an extended leave of absence.  Sylvia Cunningham, Premier's office manager, invited Molina to apply for the position.  She had known Molina for about a decade and they had previously worked together at

---

[3] Penal Code section 1203.4 authorizes a superior court to grant relief to individuals who successfully complete the terms of probation by mitigating some of the consequences of conviction.  " 'Section 1203.4 does not, properly speaking, "expunge" the prior conviction.  The statute does not purport to render the conviction a legal nullity.  Instead it provides that, except as elsewhere stated, the defendant is "released from all penalties and disabilities resulting from the offense." ' "  (*Baranchik v. Fizulich* (2017) 10 Cal.App.5th 1210, 1225.)

3

a different automobile dealership.  Molina applied for the position in January 2014.

Premier's job application asked if the applicant had ever pleaded guilty or no contest to, or been convicted of, a misdemeanor or a felony.  The application further instructed that the question should be answered in the negative as to "any conviction for which probation has been successfully completed . . . and the case has been dismissed . . . ."  Molina truthfully answered "no" to this question.  As part of the application process, Molina submitted to a background check performed by a private company named Vigilant and a fingerprint scan administered through the Department of Justice Live Scan.  Molina was not concerned about these background checks because her conviction had been judicially dismissed.  The Vigilant check indicated that Molina had not sustained any felony or misdemeanor convictions in the past seven years.  Vigilant focused upon four counties, including Santa Cruz County.

Premier's business office was headed by Yvonne Hendricks.  Based on the results of the Vigilant background check, Hendricks called Molina to tell her she had been hired.  Molina began working for Premier as a contracts/ DMV clerk in February 2014.  Molina's job duties included processing customer purchase contracts, inputting electronic DMV transactions, and reconciling contracts and DMV reports for consistency.  The DMV work took up about 75 percent of her time, and contract work about 25 percent.  Molina was trained to use the DMV system by the incumbent employee.

The DMV requires dealerships like Premier to participate in an electronic registration program called the Business Partnership Automation Program.  This program allows automobile dealerships to electronically submit DMV transactions, including vehicle registrations and transfers, to

4

the DMV for processing. Participation in the program requires DMV approval of any dealership employee who utilizes the system. Such employees are required to submit an application to the DMV and undergo a Live Scan fingerprint check with the Department of Justice. Applicants to the program are required to disclose whether they have any convictions, including convictions that have been judicially dismissed.

Premier did not submit Molina's Business Partner Automation Program application to the DMV until March 6, 2014. Molina did not disclose her misdemeanor conviction when she filled out the application. She testified that she was not trying to be dishonest and said that she failed to read the application's instruction to disclose dismissed convictions. By then, Molina had already been processing DMV transactions using the log-in credentials of the incumbent employee.

A representative from the Department of Justice testified that certain agencies, including state courts, are statutorily mandated to submit criminal history information to the Department of Justice. Relevant documents must be submitted within 30 days of a recordable event, but it is not uncommon for submissions to be late. The Department of Justice maintains its records in an automated system and the accuracy of its records depends on the information supplied by the contributing agencies. In early March 2014, there was no record in the system showing that Molina's grand theft conviction had been dismissed. Although the conviction was set aside by court order on November 25, 2013, the Department of Justice did not enter the dismissal in its database until March 25, 2014.

### iii.    *Premier Terminates Molina's Employment*

On Friday, March 7, 2014, the DMV notified Premier by letter that it had denied Molina admission to the Business Partner Automation Program

5

because the Department of Justice background check disclosed an active conviction for grand theft. Hendricks and Cunningham were surprised to learn that Molina had a conviction. Hendricks double-checked the Vigilant background check that Friday afternoon and found no mention of any conviction. Although the Vigilant check was clean, Hendricks did not contact the DMV for more information. After speaking with Premier's legal counsel, Hendricks and Premier's general manager, Carlos Mandigma, decided to terminate Molina's employment. At trial, Mandigma testified that he too thought it was odd that the Vigilant background check conflicted with the Department of Justice's background check. He considered Vigilant to be dependable.

Premier scheduled a termination meeting with Molina the following Monday, March 10, 2014. Neither Mandigma nor Hendricks interviewed Molina prior to their decision to terminate her employment, nor was any investigation conducted concerning the discrepancy between the background checks. They did not think it necessary to do so because the DMV had denied Molina's admission to the Business Partner Automation Program and she could not do the job she was hired to do. Although the moment when Premier's managers decided to fire Molina is not clear, Cunningham recalled it was either "late Friday or first thing early Monday." Mandigma testified that the decision had already been made before the Monday meeting scheduled with Molina. According to Cunningham, the decision to fire Molina was made quickly because the contracts/DMV clerk position was very important and the incumbent employee would soon be out on maternity leave. Hendricks testified, however, that the incumbent employee remained working full-time for Premier for the next two months before taking maternity leave.

6

Cunningham testified that Molina was terminated because she had been denied admission to the Business Partner Automation Program. However, the DMV denial was not mentioned on Molina's termination of employment form. Instead, Mandigma checked a box on the form stating that Molina had been fired for "falsification of job application," meaning that Molina lied by omitting the grand theft conviction on her application. At the time, Hendricks thought falsification of job application best characterized the reason for Molina's termination. The form also specified that Molina would be ineligible for rehire.

At the termination meeting, Cunningham and Mandigma provided Molina with a copy of the DMV letter and informed her that she was being let go. Molina was surprised by the letter. She testified that she informed Cunningham and Mandigma several times that her conviction had been judicially dismissed. Molina was not given an opportunity to prove that the conviction was off her record. She was handed her final paycheck and asked to sign the termination form. Molina testified that as she was gathering her belongings, she apologized and Cunningham replied, "You should have told me." Cunningham testified that Molina kept repeating she was sorry and did not explain that her conviction had been dismissed. However, Cunningham's deposition testimony—in which she acknowledged that Molina had stated at the meeting that her prior conviction had been expunged—was read into evidence. Molina signed the termination form, accepted her check, and left with a copy of the DMV letter.

On March 19, 2014, Molina appealed the DMV's decision, disputing the results of the Department of Justice's background check. Two weeks later, on April 3, 2014, Molina was admitted into the Business Partner Automation Program after the Department of Justice sent the DMV a corrected

background check showing that Molina's conviction had been judicially dismissed. The DMV cleared Molina to process vehicle registration and titling transactions.[4]

Hendricks and Cunningham both conceded at trial that Molina had truthfully filled out the job application and Hendricks acknowledged that Molina had not been interviewed prior to discharge nor given a chance to dispute the DMV's letter. Cunningham agreed that the DMV letter was inaccurate. Prior to receipt of the DMV's denial letter, there had been no complaints about Molina's work performance and she appeared qualified to do the job.

## C. *Motion for Nonsuit*

At the close of the Commissioner's case, Premier filed a motion for nonsuit pursuant to Code of Civil Procedure section 581c, asserting that the Commissioner's evidence was insufficient as a matter of law to prove a prima facie case for retaliation under section 98.6 or violation of section 432.7. Premier's counsel argued that both statutes required proof that Premier knew Molina's conviction had been dismissed at the time of her termination. Citing *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52 (*Morgan*), counsel noted the employer must be aware that an employee had engaged in protected activity in order to incur liability. Defense counsel asserted that the record was clear that Premier did not know the conviction had been dismissed when Molina was terminated, and the fact that Molina

_____

[4] The record does not disclose when Premier became aware of the DMV's correction, in part because the trial court ruled that evidence of posttermination events was not relevant to the proceedings. The court barred plaintiff's counsel from inquiring about Molina's efforts to correct the DMV's error and other posttermination events. We address the propriety of this ruling below.

8

subsequently informed Premier that her conviction had been dismissed was immaterial to the proceedings.

The Commissioner's counsel responded that there were disputed factual questions as to whether Premier had fired Molina for failing to disclose a dismissed conviction on her job application. Counsel noted that Cunningham told Molina she should have disclosed the conviction, and Premier cited falsification of the job application as the reason for the termination. In addition, the conflicting background checks and Molina's statement that her conviction had been dismissed served to put Premier on notice that the termination could constitute a violation of section 432.7 and should have been investigated.

The trial court granted the motion, concluding: "I think the set of facts is sort of a tragedy, but I think the defense is totally correct, that there is an absence of any proof upon which the jury could determine that Premier Automotive Imports had knowledge that the conviction had been expunged until after they made the decision. . . . [¶] I'm going to grant the motion for the failure to demonstrate that the dealership knew at the time that they fired her that she—that she didn't really have a conviction and wasn't really unqualified for the job that she was hired for."

On February 13, 2019, the trial court entered judgment in favor of Premier. This appeal followed.

## DISCUSSION

Nonsuit may be raised after the close of plaintiff's case-in-chief. (Code Civ. Proc., § 581c, subd. (a).) The motion shall be granted if the trial court determines that the plaintiff's evidence is insufficient as a matter of law to support a jury verdict in her favor. (*Stonegate Homeowners Assn. v. Staben* (2006) 144 Cal.App.4th 740, 745.) The trial court must proceed with caution

9

because a nonsuit precludes the jury's consideration of the case. (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838 (*Carson*).)

In reviewing a grant of nonsuit, we are guided by the same rules governing the evaluation of evidence in the light most favorable to the plaintiff. (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.) "We will not sustain the judgment ' "unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law." ' " (*Ibid.*) Although "a judgment of nonsuit must not be reversed if plaintiff's proof raises nothing more than speculation, suspicion, or conjecture, reversal is warranted if there is 'some substance to plaintiff's evidence upon which reasonable minds could differ . . . .' " (*Carson, supra,* 36 Cal.3d at p. 839.)

Resolving all evidentiary presumptions, inferences, and doubts for the plaintiff, we cannot say that Premier was entitled to judgment as a matter of law at the close of the Commissioner's case. The Commissioner presented evidence sufficient to prove that Premier was aware or had reason to believe that Molina's criminal conviction had been judicially dismissed. Sufficient evidence was also presented to allow a jury to infer that Premier retaliated against Molina for failing to disclose her dismissed conviction on her job application, and that the company used the dismissed conviction as an impermissible factor in her termination.

Premier contends that evidence of Molina's statements at the termination meeting were properly disregarded as coming after its decision to terminate her employment. We disagree. Whether the company conducted an adequate investigation of the conflicting background checks or information disclosed at the termination meeting before firing Molina created disputed

10

factual questions about Premier's motivations for terminating her. To conclude, as Premier urges, that the company should be insulated *as a matter of law* from its rushed employment decision runs counter to the statutory protections embodied in sections 432.7 and 98.6 and several employment law decisions.

**A.      *Sections 98.6 and 432.7***

Section 98.6 prohibits an employer from retaliating against an applicant or employee because the applicant or employee exercised a right afforded him or her under the Labor Code. "A person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment . . . because of the exercise by the employee or applicant for employment on behalf of himself, herself, or others of any rights afforded him or her." (§ 98.6, subd. (a).) The phrase "any rights" refers to rights provided under the Labor Code. (*Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 87.) Among these protected rights is the right to refrain from disclosing a judicially dismissed criminal conviction to a prospective employer. (§ 432.7, former subd. (a).)

"The clear purpose of section 432.7 is to prevent the misuse of criminal offender records information." (*Pitman v. City of Oakland* (1988) 197 Cal.App.3d 1037, 1044.) Former section 432.7, subdivision (a) provided, in relevant part: "No employer . . . shall ask an applicant for employment to disclose, through any written form or verbally, information . . . concerning a conviction that has been judicially dismissed or ordered sealed pursuant to law, including, but not limited to, Section[] 1203.4 . . . of the Penal Code, nor shall any employer seek from any source whatsoever, or utilize, as a factor in determining any condition of employment including . . . termination, . . . any record . . . concerning a conviction that has been judicially dismissed or

11

ordered sealed pursuant to law." (Former § 432.7, subd. (a), as amended by Stats. 2013, ch. 721, § 1, eff. Jan. 1, 2014.)

Section 432.7, subdivision (a), was enacted to serve the important public policy of removing employment barriers for those who have committed crimes that have been expunged by the courts.[5] (Assem. Floor 3d reading Analysis of Sen. Bill No. 530 (2013-2014 Reg. Sess.) as amended Aug. 30, 2013 ) In 2013, the Legislature expressed concern that Penal Code section 1203.4 had been ineffective in clearing criminal histories because records of expunged convictions were still available online. Thus, "[e]ven after receiving an expungement, rehabilitated former offenders suffer lifelong discrimination in employment, housing and travel. Not only is this unjust, it inevitably costs California millions of dollars in dealing with recidivism, unemployment, and under employment." (Sen. Public Safety Com., Analysis of Sen. Bill No. 530 (2013-2014 Reg. Sess.), as amended Apr. 15, 2013, p. 6.) When the Legislature amended section 432.7 to prohibit employers from inquiring about or utilizing dismissed criminal convictions as a basis for making employment decisions, it did so with the express aim of removing barriers to employment for rehabilitated offenders. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 530 (2013-2014 Reg. Sess.) as amended June 19, 2013, pp. 2–3; Sen Com. on Public Safety on Sen. Bill No. 530 (2013-2014 Reg. Sess.) as amended Apr. 15, 2013, pp. 6–7.)

**B.    *Section 432.7 Claim***

To establish a violation of section 432.7, the Commissioner was required to prove that Premier utilized as a factor in terminating Molina's employment any record concerning a conviction that has been judicially

---

[5] The Commissioner's unopposed November 22, 2019 request for judicial notice of section 432.7's legislative history is granted.

dismissed. (§ 432.7, former subd. (a).) As presented here, the section 432.7 claim bears similarity to a claim of wrongful discharge in violation of public policy. We look to that precedent to help guide our analysis of this claim.

" '[W]hile an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy. Any other conclusion would sanction lawlessness, which courts by their very nature are bound to oppose.' " (*Casella v. SouthWest Dealer Services, Inc.* (2007) 157 Cal.App.4th 1127, 1138–1139.) "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." (*Yau v. Allen* (2014) 229 Cal.App.4th 144, 154.)

The evidence was uncontested that an employer-employee relationship was established and later severed by Premier and that the discharge caused Molina harm. The question at issue here is whether sufficient evidence at trial was adduced to show that Premier utilized a record concerning Molina's judicially dismissed conviction as a factor in its termination decision. Stated another way, did the Commissioner present sufficient evidence from which a jury could find that Premier knew about Molina's dismissed conviction and misused that information to fire her in violation of section 432.7? The answer is yes.

While there is no evidence that Molina's supervisors were initially aware that the conviction flagged by the Department of Justice was actually a dismissed conviction, Premier had credible information—in the form of the Vigilant background check—suggesting that the DMV letter was

13

incorrect or incomplete. As Hendricks, Mandigma, and Cunningham all acknowledged at trial, the Department of Justice's report to the DMV was clearly in conflict with Vigilant's background check. Yet they took no steps to contact the DMV or otherwise investigate the discrepancy before deciding to terminate Molina. Premier argues it had no reason to disbelieve the DMV's letter, and once it learned that Molina had been denied admission to the Business Partner Automation Program, it had no choice but to fire her quickly because the contracts/DMV clerk position is an important one with time-sensitive responsibilities. As noted above, however, Molina was able to resolve the DMV's error within two weeks of challenging it, and Hendricks testified that Premier's incumbent employee continued working for Premier for two more months before taking maternity leave. It was for a jury to weigh whether to credit Premier's explanations or to find that Premier was substantially motivated by an unlawful purpose in discharging her.

Molina also testified that she explained to Cunningham and Mandigma several times at the termination meeting that her conviction had been dismissed. This disclosure put Premier's managers directly on notice that the conviction on Molina's background check had been judicially dismissed and that Molina had exercised her right not to disclose the dismissed conviction on her job application. Despite the warning signs, Premier pressed on and terminated Molina's employment on the basis of a "falsified" job application.

The trial court reluctantly found that there was no firm evidence upon which a jury could determine that Premier was aware that the conviction had been expunged until after it made its decision to fire Molina. This was error. As discussed above, the background check discrepancy put Premier on notice that either the Vigilant or Department of Justice background check was mistaken. Nothing prevented the company from taking more than a weekend

14

to evaluate whether it was proceeding in a lawful manner or from taking stock of Molina's disclosure that her conviction had been judicially dismissed. Whether an employer has conducted an adequate investigation before dismissing an employee for an unlawful purpose is generally a question of fact for the jury.

In *Mendoza v. Western Medical Center Santa Ana* (2014) 222 Cal.App.4th 1334 (*Mendoza*), for example, the plaintiff sued his former employer for wrongful termination in violation of public policy, claiming he was fired because of his report of sexual harassment by his supervisor. (*Id.* at p. 1339.) The defendants maintained that they fired the plaintiff after determining he had willingly engaged in flirtatious and lewd behavior with his supervisor, and not as a result of any retaliatory animus. (*Id.* at p. 1343.) Judgment for the plaintiff was reversed after the *Mendoza* court found that the jury had been erroneously instructed and the error was prejudicial. (*Id.* at pp. 1341–1342.) The appellate court rejected defendants' contention, however, that the evidence was insufficient as a matter of law to find that the plaintiff's sexual harassment report was a substantial motivating reason for his discharge. (*Id.* at p. 1344.) After noting several facts which could support a jury finding of unlawful retaliation, the court highlighted plaintiff's expert testimony that the employer failed to conduct an adequate investigation into what happened. (*Ibid.*) It observed that "[t]he lack of a rigorous investigation by defendants is evidence suggesting that defendants did not value the discovery of the truth so much as a way to clean up the mess that was uncovered when [plaintiff] made his complaint." (*Ibid.*)

Similarly, in *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 278–283, the plaintiff sued his former employer alleging that the stated reason for his termination, that he sexually harassed a female contractor,

15

was a pretext for his employer's discrimination against him on the basis of his race and national origin. (*Id.* at pp. 248–249.) The appellate court reversed the trial court's grant of summary judgment for the employer, finding that there was substantial evidence the employer failed to conduct a fair and thorough investigation into the matter by having a biased supervisor with an "axe to grind" conduct the investigation, failing to comply with its own policy to give the alleged harasser a copy of the written complaint, and failing to interview relevant witnesses. (*Id.* at p. 277, 280.) The *Nazir* court observed that an employer's failure to interview witnesses for potentially exculpatory information can indicate pretext. (*Id.* at pp. 278–280; see *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 120–121; *Greene v. Coach, Inc.* (S.D.N.Y. 2002) 218 F.Supp.2d 404, 410; *Probst v. Reno* (N.D.Ill. 1995) 917 F.Supp. 554, 561.)

Here, Premier conducted *no* investigation into the circumstances around the discrepancy between the criminal background checks or Molina's disclosure to Premier's managers that her conviction had been expunged. Molina was not interviewed prior to her termination or given an opportunity to prove to her superiors that she was telling the truth, nor was the DMV contacted.[6] The evidence further established that the DMV's mistake was corrected after Molina's appeal to the agency within a matter of weeks, but Molina was not rehired by Premier. In short, there was sufficient evidence from which a jury could infer that Premier had no interest in clearing up the

---

[6] As our Supreme Court has observed in a related context, an adequate investigation by an employer prior to discharge requires at a minimum that the employee be provided "notice of the claimed misconduct and a chance for the employee to respond." (*Cotran v. Rollins Hudig Hall Internat., Inc.* (1998) 17 Cal.4th 93, 108 [involving action for breach of implied contractual duty to discharge only upon good cause].)

16

confusion surrounding Molina's dismissed criminal conviction. The company's rush to fire her without investigation, and its stated basis for doing so—a "falsified" job application—could be viewed as pretextual, and a fact finder could conclude that the real reason Premier discharged Molina was its discovery that she had not disclosed a dismissed criminal conviction.

Finally, Premier contends that there is no evidence to support a section 432.7 claim because the DMV letter was not a "record" within the meaning of the statute. Section 432.7, former subdivision (a) prohibited employers from requiring applicants to disclose "*information* . . . concerning a conviction that has been judicially dismissed . . . ." As to employees, the statute prohibited employers from "utiliz[ing], as a factor in determining any condition of employment including . . . termination . . . , any *record* . . . concerning a conviction that has been judicially dismissed. . . ." (Italics added.) Presupposing a distinction between "record" and "information," Premier asserts the Legislature must have intended for the term "record" to be limited to "official" documents containing information maintained by law enforcement agencies. We are not persuaded.

Former section 432.7 did not define the term "record." Premier contends we should interpret the term as it is utilized in various sections of the Penal Code, citing sections 851.7, 851.86, 851.90, 1203.45, 11105, 13102, and 13301. These provisions pertain to the sealing of criminal records or the dissemination of criminal history information by law enforcement agencies. Naturally, they concern official government records. But former section 432.7 makes no mention of these statutory provisions, and Premier does not explain why a private report summarizing the findings of a criminal background check, for example, would be excluded from the meaning of a "record" in section 432.7. Indeed, our high court has concluded that employer

17

background checks which "contain[] information regarding the subject's criminal records, sex offender status, address history, driving records, and employment history" are credit "records" subject to the requirements of the Consumer Credit Reporting Agencies Act (Civ. Code § 1785.1 et seq., added by Stats. 1970, ch. 1348, § 1, p. 2512, repealed and replaced by Stats. 1975, ch. 1271, § 1, pp. 3369–3387). (*First Student Cases* (2018) 5 Cal.5th 1026, 1031–1032, 1036; see also *Skulason v. California Bureau of Real Estate* (2017) 14 Cal.App.5th 562, 571 [noting that employers could be exposed to possible liability under section 432.7 if they base employment decisions on incomplete criminal conviction history published on a website].)

As the Commissioner observes, Premier's narrow construction would leave employers free to use private background checks and Internet searches to terminate or otherwise punish employees for failing to disclose a dismissed conviction because such reports would not fall within its definition of "record," a result that would defeat the apparent purpose of section 432.7. We agree with the Commissioner that "record" should be interpreted in its common-sense meaning as "[a]n account, as of information or facts, set down especially in writing as a means of preserving knowledge" or "[i]nformation or data on a particular subject collected and preserved." (See American Heritage Dict. (5th ed. 2011). Under this plain language definition, a letter from the DMV disclosing a criminal conviction record reported by the Department of Justice qualifies as a "record" of a conviction.

Section 432.7's legislative history supports a broader and more flexible reading of the term "record" than the one offered by Premier. When the law was amended in 2013 to prohibit employer misuse of criminal conviction records of rehabilitated offenders, the bill author argued "that while [the] person is supposed to be relieved from the disabilities of their offense, the fact

18

that *people can get records online* and understand what a dismissal under Penal Code Section 1203.4 means, even an offense dismissed under Penal Code Section 1203.4 is interfering with the ability of many to fully rehabilitate by gaining employment." (Sen. Comm. on Public Safety, Report on Sen. Bill No. 530 (2013-2014 009 Reg. Sess.) as amended Apr. 15, 2013, italics added.) Given the clear purpose of the law to remove employment barriers for individuals whose convictions have been dismissed or expunged, it is unlikely the Legislature would have intended the meaning of a "record" to be limited to criminal history information maintained by governmental agencies. In any event, even under Premier's narrow interpretation, we see no reason why the DMV letter would not qualify as an "official" criminal history record, particularly as the DMV is itself a governmental agency and the information was obtained directly from the Department of Justice, the primary agency that maintains such records on behalf of the State of California.

## C. *Section 98.6 Claim*

For the same reasons discussed above, we conclude that nonsuit with respect to the Commissioner's retaliation claim was improvidently granted. To establish a prima facie violation of section 98.6, the Commissioner was required to demonstrate that Molina engaged in protected activity, that Premier subjected her to an adverse employment action, and that Molina's protected activity substantially motivated Premier's adverse employment action. (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)

Premier does not dispute that Molina engaged in protected activity by exercising her right not to disclose her dismissed conviction on her job application. It is also undisputed that Premier subjected Molina to an adverse employment action. The salient question here is whether the Commissioner presented sufficient evidence to establish that Premier's

19

discharge was motivated at least in part by Molina's failure to disclose the dismissed conviction on her job application. Although we agree with Premier that the required causal link cannot be established without evidence that Premier's decisionmakers had knowledge of Molina's protected activity (*Morgan, supra,* 88 Cal.App.4th at p. 70), we do not agree that such evidence was lacking as a matter of law from the Commissioner's case-in-chief.[7]

" 'The retaliatory motive is "proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter." [Citation.] "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.' " [Citation.]' [Citation.] 'Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.' " (*Morgan, supra,* 88 Cal.App.4th at pp. 69–70.)

We conclude there was sufficient evidence to establish that Premier's employment decision was substantially motivated by Molina's failure to disclose her dismissed conviction from her job application. As discussed above, the conflicting criminal background checks and Molina's disclosure at the termination meeting served to put Premier on notice that her conviction had, in fact, been dismissed. Premier's failure to investigate these

---

[7] The Commissioner also contends that a traditional causation analysis is unworkable in circumstances where the protected activity involves a worker's right to nondisclosure of a dismissed conviction. We need not address the Commissioner's causation argument as the record here demonstrates that Molina voluntarily disclosed her dismissed conviction to her superiors, and sufficient evidence was presented for a jury to find that Premier's employment decision was motivated by a retaliatory animus.

circumstances before terminating Molina supports the inference that Premier knew she could be telling the truth and that Premier's basis for firing her—a "falsified" job application—was pretextual. In addition, Molina testified that as she was gathering her belongings to leave, she apologized and Cunningham replied, "You should have told me." The evidence thus supports a finding that a substantial motivating reason for Molina's firing was her failure to disclose the dismissed conviction on her job application.

Premier argues that its dismissal decision was based on the DMV's denial of Molina from the Business Partnership Automation Program. But as the Commissioner points out, that was not the reason given on the termination form. The form stated instead that Molina was fired for "falsification of job application"—a rationale the company concedes was wrong. Our charge in reviewing the nonsuit order is to view the evidence in the light most favorable to the Commissioner, indulging all legitimate inferences and presumptions in her favor, and disregarding any conflicting evidence. Viewed in this light, we conclude that the evidence is more than sufficient to support a finding of unlawful retaliation.

Premier also contends that the Commissioner cannot rely on posttermination conduct to support a retaliatory termination claim, citing *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237 (*Avila*). In *Avila,* an airline employee was fired for violating the company's attendance policy. (*Id.* at pp. 1244–1245.) After he was informed that he was being terminated for attendance issues, he told his supervisors for the first time that several of his absences were due to a hospitalization for acute pancreatitis. (*Id.* at p. 1245.) The next day, he delivered proof of his diagnosis and unsuccessfully requested reinstatement. (*Ibid*.) He then sued

for disability discrimination under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.), along with other causes of action. (*Ibid.*)

The Court of Appeal affirmed the trial court's award of summary judgment in the employer's favor on the FEHA claim. (*Avila, supra,* 165 Cal.App.4th at p. 1247.) As to the information the employee provided posttermination, the court concluded: "Evidence that a decision maker learned of a plaintiff's disability *after* deciding to take adverse employment action is not probative of whether the decision maker was aware of the plaintiff's disability when he or she made the decision. Such evidence is irrelevant to determining whether the decision maker acted from a discriminatory animus." (*Id.* at p. 1251.)

We find *Avila* distinguishable. *Avila* did not involve an employer whose managers were aware that conflicting background checks may indicate that the employee's criminal conviction had been dismissed by court order, a circumstance that could have been clarified with an investigation. In contrast, there was no evidence that the employer in *Avila* knew about the plaintiff's medical condition, and the employer first suspended the plaintiff before taking its time to decide that he should be discharged. (*Avila, supra,* 165 Cal.App.4th at pp. 1244–1245.) We do not find the two situations at all comparable. Furthermore, unlike the posttermination notification provided to the employer in *Avila,* Premier was advised by Molina *during* the meeting in which she was being fired that the conviction Premier was relying on as the basis for her discharge had been judicially dismissed.

Several federal courts have concluded that posttermination evidence is not per se inadmissible or irrelevant in the context of employment discrimination claims. In appropriate cases, such evidence can support an inference that a termination was substantially motivated by an unlawful

reason. "The relevance of post-termination evidence in a Title VII case depends on the nature of the evidence, the purpose for which it is offered, and the context in which it arises. In some circumstances, post-termination data is relevant to the employer's state of mind before termination. See *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 561 10th Cir. 1996) (permitting plaintiff to introduce evidence that other employees in the protected age class were replaced, because 'evidence concerning the make-up of the employment force and events which occurred after plaintiff's termination were entirely relevant to the question of whether or not age was one of the determinative reasons for plaintiff's termination'], cited in *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1080 (D.C. Cir. 1999). In other circumstances, posttermination data is irrelevant to pretermination events and motives. See *Warren v. Prejean*, 301 F.3d 893, 905 (8th Cir. 2002) (affirming the exclusion of testimony about information that was not previously available to the employer and was therefore 'irrelevant as to the information known to [the employer] at the time of the termination')." (*Bowie v. Maddox* (D.C. Cir. 2011) 642 F.3d 1122, 1134–1135.)

Regarding posttermination remarks suggestive of a discriminatory motive, the First Circuit Court of Appeals has stated, "That the remarks occurred subsequent, rather than prior, to the allegedly discriminatory conduct does not alter their admissibility." (*Brown v. Trustees of Boston University* (1st Cir. 1990) 891 F.2d 337, 350 [jury was entitled to infer that any discriminatory animus toward women manifested in 1982 and 1983 would have existed in 1980 and 1981, when plaintiff was terminated].) We agree with these authorities and conclude, in the context of the particular facts of this case, that evidence bearing on the termination meeting and

23

posttermination events is relevant to establish the employer's pretermination motive for firing Molina.

Evidence that Molina informed her supervisors as she was in the process of being terminated that her conviction had been dismissed is relevant to Premier's motives. Her disclosure came on the heels of conflicting criminal background reports and Premier's rush to fire her without investigating these circumstances or contacting Molina or the DMV. The timing of her disclosure could support a reasonable inference that a substantial motivating factor in Premier's decision was her failure to disclose a judicially dismissed criminal conviction. Similarly, evidence that Premier did not rehire her after she obtained admission into the Business Partnership Automation Program within weeks of the DMV's initial denial letter also suggests that the dismissed conviction played an impermissible role in her termination.

In sum, because we must resolve every conflict in the evidence in favor of the Commissioner and indulge in every presumption and inference that reasonably could support her case, we reverse the judgment below. On retrial, the Commissioner will be permitted to introduce evidence in support of her claims, including evidence concerning the termination meeting and relevant posttermination events such as Molina's efforts to correct the DMV error and Premier's knowledge of and actions concerning those efforts. While we conclude that sufficient evidence was offered at trial for the matter to be submitted to a jury, we express no opinion as to what the ultimate result should be.

## DISPOSITION

The judgment is reversed. The matter is remanded to the superior court for a new trial.

24

_____
Sanchez, J.

WE CONCUR:


_____
Humes, P. J.


_____
Margulies, J.

*A156985  Garcia-Brower v. Premier Automotive Imports*

Trial Court:      Alameda County Superior Court

Trial Judge:      Hons. Frank Roesch and Noël Wise

Counsel:

Nicholas Patrick Seitz, Dorothy A. Chang and Doris Ng for Plaintiff and Appellant.

Richard J. Ritchie and Monika L. Brohamer for Defendant and Respondent.

*A156985  Garcia-Brower v. Premier Automotive Imports*